UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JASON THOMAS                                            CIVIL ACTION

VERSUS                                                  NO. 20-298

WARDEN DARRYL VANNOY                                    SECTION "R" (2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.   Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1]   For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred, or alternatively, **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court review.

## I.    INTRODUCTION FOR THIS REOPENED CASE

Petitioner Jason Thomas filed this *pro se* federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 related to his 2015 Jefferson Parish convictions on two counts of second degree murder.   ECF No. 5.   The State filed an opposition addressing Thomas' complaint and asserting that the petition was not timely filed and that Thomas failed to exhaust state court review. ECF No. 14.   On July 26, 2020, I granted Thomas' unopposed motions to stay (ECF Nos. 10, 18,

---

[1]  A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.   *Id*. § 2254(e)(2)(B).

19) to allow him to complete exhaustion of his claims through a pending writ application before the Louisiana Supreme Court.   ECF No. 22.

On November 4, 2020, the case was reopened, and Thomas filed an Amended and Supplemental Petition asserting an additional claim of actual innocence and supplement to his ineffective assistance of counsel claims.   ECF No. 28, at 6-7.   Following the court's briefing order (ECF No. 29), the State and Thomas have filed additional briefing addressing the State's limitations and other defenses.   ECF Nos. 36, 39, and 42.   For the reasons that follow, Thomas' petition was not timely filed and should be dismissed for that reason.   Alternatively, Thomas' petition may be dismissed for his failure to exhaust state court review.

## II.   FACTUAL BACKGROUND

Petitioner Jason Thomas is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.   ECF No. 5, at 1.   On April 17, 2014, Thomas and co-defendant Garard K. Achelles were indicted by a Jefferson Parish grand jury on two counts of second degree murder.[2]   Achelles was also charged with pandering and for being a felon in possession of firearm.[3]

The Louisiana Fifth Circuit Court of Appeal summarized the facts established at trial as follows in relevant part:

> At trial, Ramonica Gainey, a friend of both victims, testified regarding the events surrounding and leading up to the murders of Demektric Anderson and Tacara Williams-Moss.   She testified that she, Mr. Anderson, and Ms. Williams-Moss traveled in Ms. Williams-Moss's black Dodge Charger from Tennessee late Saturday night and arrived in New Orleans around 2:00 or 3:00 a.m. the morning of December 29, 2013.   After arriving, they checked into a hotel in New Orleans

---

[2] State Record (hereinafter "St. R.") Vol. 1 of 15, Indictment, 4/17/14; *id.*, Grand Jury Return, at 1-2, 4/17/14.
[3] *Id.*, Indictment, 4/17/14.

East.   Ms. Gainey explained that the purpose behind their trip to New Orleans was to "find work to make some money" by dancing in the strip clubs in New Orleans. They stayed at the hotel in New Orleans East until checkout around 12:00 or 1:00 p.m. and then went to another hotel, a Super 8, in Metairie.   She recalled that while they were at the hotel around 4:00 a.m. on December 30, 2013, Mr. Anderson received a phone call; Mr. Anderson relayed to Ms. Gainey and Ms. Williams-Moss that "yeah, the serve is gonna make," which meant that he was going to sell some pills.

Eventually, all three of them left the hotel in the black Dodge Charger to meet the potential buyer for the pills.   Mr. Anderson drove, Ms. William-Moss was in the front passenger seat, and Ms. Gainey was in the rear passenger seat.   They drove a short distance and arrived at an apartment complex.   As they pulled into the apartment complex, Ms. Gainey saw a black man standing "off to the side" on the driver's side.   Mr. Anderson spoke with the man through the rolled-down driver's side window.   At some point later, Ms. Gainey noticed another black man at the rear of the car.   Although she did not see either of their faces, she described the first man as a "slimmer guy" and the second man as "kind of stocky."   Ms. Gainey described that "they finished up whatever they had going on," and then she heard someone say "is that the guy?"   At that point, she heard gunshots and screamed at Mr. Anderson to back up the car.   She related that once they got onto the service road, Mr. Anderson collapsed, and the car crashed off the road.   After the car crashed, Ms. Gainey called 9-1-1.

. . . .

Calvenia Dott testified that she came to New Orleans twice in December 2013.   She explained that she and Abby Stallworth came to New Orleans to make money by posting on Backpage.   She and Ms. Stallworth posted their pictures on the site with a phone number, as well as their location for potential clients to contact them.   Ms. Dott recounted that on her first trip, she initially met Achelles and Defendant outside of their hotel room, the Super 8 in Metairie.   She and Ms. Stallworth exchanged phone numbers with Defendant and Achelles.   Their second trip to New Orleans was after Christmas but before New Year's Eve.   They called Defendant and Achelles expressing their desire to return, and Achelles, Defendant, and Glenn Lemmon went to Mississippi and brought them back to New Orleans. She testified that on her second trip, she and Ms. Stallworth stayed at the same Super 8 in Metairie.   They posted on Backpage using a phone number that was not their own; it was a flip phone that they got from "Jay and them" with the number 504-214-****.   They also posted on the site using Defendant's phone number, 504-373-****.

While they were staying at the Super 8, before the murders occurred, Defendant bought them drugs from "the dude in the black Charger."   She explained that Defendant told her that "he met a dude at the store in a black Charger. He was staying at the Super 8 Motel [too], and he had Xanax bars."

Ms. Dott explained that Defendant and Achelles went to meet the "guy in the black Charger" a second time.   Defendant called him setting up a place to meet him.   After hanging up the phone, Ms. Dott heard Defendant say, "I'm going to go get that boy."   Both Ms. Dott and Ms. Stallworth testified that Defendant left with Achelles and took two guns with them.   She stated that the phone Defendant used to call the guy in the black Charger was the flip phone she and Ms. Stallworth used to post on Backpage, and Defendant took it with him when he left.   Once Ms. Stallworth and Ms. Dott realized they were not returning soon, they tried to contact Defendant's and Achelles' phones, as well as the flip phone because the flip phone was the number they posted to Backpage with, and they would not be able to set up clients without it.

After Defendant and Achelles left, they did not return to the Super 8.   At some point later, Glenn Lemmon came to their room to tell them they were moving hotels; she and Ms. Stallworth left the Super 8 for another motel, the London Lodge, where Defendant, Achelles, and Mr. Lemmon were already located.   While at that hotel room, Ms. Dott stated they were watching the news on television, which had coverage regarding a murder that happened near the Super 8 involving a black Charger.   She stated that she heard Defendant say, "I killed that boy."   Ms. Dott also heard Defendant express concern when learning about a third person who was in the car by stating that he did not know another person was present in the car[.]   Ms. Dott also testified that Defendant complained about injuring his foot.   Further, she testified that she heard either Defendant or Achelles say that the flip phone was gone because they threw it in the river.

Abby Stallworth testified that, before the murders occurred, Defendant told Achelles that he saw "some weed and money and stuff" in the black Charger, and he "wanted to rob him."   In corroboration with Ms. Dott's testimony, Ms. Stallworth also testified that she heard Defendant say, "I shot that boy," referring to the coverage of the murder that happened near the Super 8 involving a black Charger.   Ms. Stallworth similarly testified that she heard Defendant and Achelles say the phone was "swimming with the fishes."   Since the flip phone-the phone they were using to set up their Backpage ad-was no longer available, they used their own phones.   Ms. Stallworth further testified that they moved from the London Lodge to another hotel downtown.   After the hotel downtown, they moved locations again.   Subsequently, they received a call from a client, asking them to meet at the LaQuinta Inn.   Achelles transported Ms. Dott and Ms. Stallworth in "the same blue car."   Unbeknown to her at the time, the client calling them to meet at the LaQuinta Inn was Officer Keith Locascio, with the vice squad at Jefferson Parish Sheriff's Office, who set up the sting operation at the request of Detective Gai.   Ms. Stallworth and Ms. Dott were ultimately arrested and brought to the police station to be interviewed.[4]

---

[4]  *State v. Thomas*, 15-KA-759 (La. App. 5 Cir. 5/12/16), 192 So. 3d 291, 294-95, 297-98; St. R. Vol. 11 of 15, 5th Cir. Opinion, 15-KA-759, at 3-4, 8-10, 5/12/16.

Thomas and Achelles were called to joint trial and began jury selection on January 20 and 21, 2015.[5]   On January 22, 2015, prior to the taking of evidence, the state trial court granted a joint motion for mistrial by the State and the defendants.[6]   The defendants' cases were later severed.[7]

Thomas went to trial before a jury on May 5 through 8, 2015.[8]   The jury found him guilty on both counts of second degree murder.[9]   At a May 27, 2015, hearing, the state trial court denied Thomas' motion for new trial.[10]   In the same hearing, Thomas waived legal delays and was sentenced on each count to life in prison to be served consecutively and without benefit of parole, probation, or suspension of sentence.[11]

On direct appeal to the Louisiana Fifth Circuit, Thomas' appointed counsel asserted two claims:

(1)    the state trial court erred when it allowed an engineer at Fiat-Chrysler in Detroit to qualify as an expert and give opinions on the make of a vehicle in the video footage without requiring scientific methods and expertise in accordance with *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993);

(2)    the state trial court erred when it denied the motion for new trial based on insufficient evidence to support the identification and conviction; and

---

[5] St. R. Vol. 7 of 15, at 21-22, Trial Mins., 1/20/15; *id*. at 23-24, Trial Mins., 1/21/15; St. R. Vol. 8 of 15, at 571-686, Trial Tr., 5/6/15; St. R. Vol. 9 of 15, at 687-921, Trial Tr., 5/6/15; *id*. at 922-1040, Trial Tr., 5/7/15; St. R. Vol. 10 of 15, at 1041-1340, Trial Tr., 5/7/15; *id*. at 1341-1424, Trial Tr., 5/8/15; St. R. Vol. 11 of 15, at 1425-1656, Trial Tr., 5/8/15.

[6] St. R. Vol. 7 of 15, at 25, Min. Entry, 1/22/15; St. R. Vol. 8 of 15, at 509, 511, Hearing Tr., 1/22/15.

[7] St. R. Vol. 7 of 15, at 27, Min. Entry, 3/13/15.

[8] St. R. Vol. 3 of 15, Trial Mins., 5/5/15; *id*., Corrected Trial Mins., 5/26/15; *id*., Trial Mins., 5/7/15; *id*., Trial Mins., 5/8/15.

[9] *Id*., Trial Mins., 5/8/15; *id*., Jury Verdict (count 1), 5/8/15; *id*., Jury Verdict (count 2), 5/8/15.

[10] St. R. Vol. 11 of 15, at 1663-66, Sentencing Tr., 5/27/15; St. R. Vol. 3 of 15, Sentencing Mins., 5/27/15; *id*., Motion for New Trial, 5/19/15; *id*., Trial Court Order, 5/28/19.

[11] St. R. Vol. 11 of 15, at 1666, 1669-70, Sentencing Tr., 5/27/15; St. R. Vol. 3 of 15, Sentencing Mins., 5/27/15.

(3)    The state trial court imposed an excessive sentence when it ordered that the sentences run consecutively.[12]

On February 23, 2016, the Louisiana Fifth Circuit granted Thomas leave to file a *pro se* supplemental brief on or before March 16, 2016, but Thomas did not file a brief.[13]

On May 12, 2016, the Louisiana Fifth Circuit affirmed Thomas' convictions and sentences, finding the first two claims meritless.[14]   The court further held that Thomas failed to preserve for appeal his third claim of excessive sentence, and found that the mandatory life sentences were not unconstitutionally excessive.[15]

The Louisiana Supreme Court denied Thomas' subsequent writ application without stated reasons on May 19, 2017.[16]   Thomas did not file an application for writ of certiorari with the United States Supreme Court within 90 days, and thus, his conviction and sentence became final on August 17, 2017.[17]

One year later, on August 17, 2018, Thomas filed with the state trial court an application for post-conviction relief asserting three claims:

(1)    he received ineffective assistance of counsel on direct appeal when counsel failed to assert meritorious claims of a confrontation clause violation and prosecutorial misconduct;

(2)    prosecutorial misconduct occurred during trial in violation of petitioner's Fourteenth Amendment rights when the prosecutor made repeated

---

[12] St. R. Vol. 11 of 15, Appeal Brief, 2015-KA-0759, at 6-7, 1/11/16.

[13] *Id.*, Motion to Borrow Record, 2/1/16 (dated 1/15/16); *id.*, 5th Cir. Order, 2015-KA-759, 2/23/16; *id.*, *Pro Se* Motion for Extension, 2/22/16..

[14] *State v. Thomas*, 15-KA-759 (La. App. 5 Cir. 5/12/16), 192 So. 3d 291, 294, 301-08; St. R. Vol. 11 of 15, 5th Cir. Opinion, 15-KA-759, at 14-27, 5/12/16.

[15] *Thomas*, 192 So. 3d at 308-09; St. R. Vol. 11 of 15, 5th Cir. Opinion, 15-KA-759, at 27-29, 5/12/16.

[16] *State v. Thomas*, 2016-KO-1085 (La. 5/19/17), 219 So. 3d 335; St. R. Vol. 14 of 15, La. Sup. Ct. Order, 2016-KO-1085, 5/19/17; *id.*, La. Sup. Ct. Writ Application, 16-KO-1085, 6/13/16 (dated 6/2/16).

[17] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); SUP. CT. R. 13(1).

references to defendant's post-arrest silence and relied on perjured
testimony; and

(3)     he was denied effective assistance of counsel during pretrial proceedings,
trial, and sentencing.[18]

On September 11, 2018, Thomas filed a supplement to the post-conviction application in
which he asserted six additional claims.[19]   The state trial court, however, denied the supplemental
application on September 13, 2018, because it had already denied Thomas leave to file it.[20]   The
Louisiana Fifth Circuit denied Thomas' related writ application on January 25, 2019.[21]

In the meantime, on November 26, 2018, the State filed an opposition response to Thomas'
initial post-conviction application.[22]   On December 3, 2018, the state trial court denied Thomas'
application holding that Thomas' ineffective assistance of counsel claims were meritless under
*Strickland v. Washington*, 466 U.S. 668 (1984), and related case law.[23]   The court also found that
Thomas' prosecutorial misconduct claim was procedurally barred because it could have been but
was not raised in prior proceedings, citing LA. CODE CRIM. PROC. art. 930.4(B), (C).[24]

---

[18]  St. R. Vol. 4 of 15, Application for Post-Conviction Relief, 8/23/18 (dated 8/17/18); *id*., Memorandum in Support, at 5-6, 8/23/18 (dated 8/17/18).

[19]  *Id*., Supplemental Post-Conviction Application, 9/11/18.   The additional claims were: (1) ineffective assistance when counsel failed to put the State's case to meaningful adversarial testing; (2) ineffective assistance when counsel failed to object to (a) a lack of corroborating evidence to prove attempted armed robbery as an element of second degree murder, and (b) jury instructions which constructively amended the indictment; (3) denial of due process when the State used illegal and misleading cellphone location information; (4) ineffective assistance when counsel failed to object to inadmissible hearsay evidence and the prosecutor's improper misleading cross-examination of the alibi witness; (5) ineffective assistance when counsel failed to impeach the State's witness, Det. Gai, with the police report and failed to adequately cross-examine other State witnesses; and (6) ineffective assistance when counsel failed to call Achelles as an alibi witness and opened the door to inadmissible other crimes evidence.   *Id*. at 2.

[20]  *Id*., Trial Court Order, 9/13/18; *id*., Trial Court Order, 8/24/18.

[21]  St. R. Vol. 12 of 15, 5th Cir. Order, 18-KH-737, 1/25/19; *id*., 5th Cir. Writ Application, 18-KH-737, 12/21/18.

[22]  St. R. Vol. 4 of 15, State's Response, 11/26/18.

[23]  *Id*., Trial Court Order, at 1-3, 12/3/18.

[24]  *Id*. at 2.

On December 5, 2018, Thomas filed a reply to the State's November 26, 2018, opposition response.[25]   By order issued December 17, 2018, the state trial court noted receipt of Thomas' pleading but found no basis to disturb its December 3, 2018, ruling denying the application.[26]   The trial court later granted Thomas until February 19, 2019, to seek review.[27]

Thomas thereafter filed multiple pleadings in the Louisiana Fifth Circuit.   On January 24, 2019, Thomas filed a motion to stay his post-conviction proceedings to allow him to file another post-conviction application or supplement his application with new claims for review in the state trial court.[28]   The court denied the motion on February 5, 2019.[29]

On February 18, 2019, Thomas filed a writ application with the Louisiana Fifth Circuit seeking review of the trial court's December 3, 2018, order denying his post-conviction application.[30]   Shortly after, on February 28, 2019, Thomas filed another motion to stay with the Louisiana Fifth Circuit.[31]   The court denied the motion on March 11, 2019.[32]   On April 15, 2019, the court also denied Thomas' writ application finding no error in the state trial court's December 3, 2018, ruling denying him post-conviction relief.[33]

---

[25] *Id.*, Objection to State's Response, 12/10/18 (dated 12/5/18).
[26] *Id.*, Trial Court Order, 12/17/18.
[27] St. R. Vol. 5 of 15, Trial Court Order, 1/3/19.
[28] St. R. Vol. 12 of 15, 5th Cir. Motion, 19-KM-30, 1/31/19 (dated 1/24/19).
[29] St. R. Vol. 13 of 15, 5th Cir. Order, 19-KM-30, 2/5/19.
[30] St. R. Vol. 12 of 15, 5th Cir. Writ Application, 19-KH-67, 2/19/19 (dated 2/18/19).
[31] *Id.*, 5th Cir. Motion, 19-KH-67, efiled 2/28/19 (received from Thomas by prison legal department on 2/28/19).
[32] *Id.*, 5th Cir. Order, 19-KH-67, 3/11/19.
[33] *Id.*, 5th Cir. Order, 19-KH-67, 4/15/19.

On January 14, 2020, the Louisiana Supreme Court denied Thomas' writ application finding that he failed to meet his burden of proof under *Strickland*.[34]  The court also denied Thomas' motion to stay filed with his writ application.[35]

In the meantime, on May 20, 2019, Thomas filed with the state trial court a second application for post-conviction relief, claiming that the trial court erred in denying his first motion for a new trial and asserting ineffective assistance of counsel, and a motion for new trial.[36]  Both the application and motion were based on a January 10, 2019, affidavit from Glenn Lemon and counsel's alleged failure to interview Lemon and call him at trial.[37]  On June 18, 2019, the state trial court denied the motion for new trial as meritless.[38]  By separate order issued the same day, the court held that Lemon's affidavit was not in authentic form and not sufficient new evidence to allow a successive petition.[39]  The court therefore denied the post-conviction application as successive under LA. CODE CRIM. PROC. art. 930.4 and alternatively as meritless.[40]

---

[34] *State v. Thomas*, 286 So. 3d 1045 (La. 1/14/20); St. R. Vol. 5 of 15, La. Sup. Ct. Order, 2019-KH-00880, 1/14/20; St. R. Vol. 15 of 15, La. Sup. Ct. Writ Application, 19-KH-880, 5/29/19 (dated 5/20/19).   Pursuant to LA. SUP. CT. R. X§5, Thomas had 30 days, or until May 15, 2020, from the issuance of the Louisiana Fifth Circuit's ruling to file his writ application.   His signature on the writ application is dated May 20, 2019, which is beyond the period allowed for him to have filed a writ application.   The court did not rule on this basis.
[35] St. R. Vol. 15 of 15, La. Sup. Ct. Notice, 1/14/20; *id.*, La. Sup. Ct. Motion to Stay (dated 5/20/19).
[36] St. R. Vol. 5 of 15, Application for Post-Conviction Relief, 5/24/19 (dated 5/20/19); *id.*, Motion for New Trial, 5/24/19.
[37] *Id.*, Motion for New Trial, Ex. "A," 5/24/19.
[38] *Id.*, Trial Court Order on Motion for New Trial, 6/18/19.
[39] *Id.*, Trial Court Order on Application, 6/18/19.
[40] *Id.*

Following alleged issues with his legal mail,[41] Thomas filed a writ application with the Louisiana Fifth Circuit seeking review of the state trial court's June 18, 2019, orders.[42]   The Louisiana Fifth Circuit denied the writ application February 4, 2020, finding no error in the trial court's rulings.[43]   On September 23, 2020, the Louisiana Supreme Court also denied Thomas' related writ application finding that he failed to meet an exception to the permit filing of his successive petition and citing its prior opinion in *State v. Thomas*, 2019-KH-0880 (La. 1/14/20), 286 So. 3d 1045.[44]

While these matters were pending, on August 18, 2020, Thomas filed a third post-conviction application in the state trial court challenging his non-unanimous jury verdict as unconstitutional.[45]   The state trial court denied the application on September 1, 2020, as impermissibly successive.[46]   On December 8, 2020, the Louisiana Fifth Circuit found no error in the trial court's ruling and denied Thomas' related writ application.[47]   On April 13, 2021, the

---

[41]  *See Thomas v. State*, 19-KH-431 (La. App. 5th Cir. 10/10/19), 2019 WL 5090400, at *1 (order denying stay and granting writ in part for trial court to provide copies); *see also* St. R. Vol. 13 of 15, 5th Cir. Order, 19-KH-431, 10/10/19 (same); *id.*, 5th Cir. Writ Application, 19-KH-431, 9/10/19 (seeking review of trial court's orders and a stay until copies were provided); St. R. Vol. 5 of 15, Notice, 8/27/19 (seeking extension because erroneously returned mail interfered with his ability to timely seek review); *id.*, Trial Court Order, 8/29/19 (denying extension because prior court orders were served on Thomas).

[42]  St. R. Vol. 13 of 15, 5th Cir. Writ Application, 20-KH-12, 1/7/20 (dated 12/26/19).

[43]  *Id.*, 5th Cir. Order, 20-KH-12, 2/4/20.

[44]  *Thomas v. State*, 2020-KH-00654 (La. 9/23/20); 301 So. 3d 1183; St. R. Suppl. Vol. 1 of 3, La. Sup. Ct. Order, 2020-KH-00654, 9/23/20; St. R. Suppl. Vol. 3 of 3, La. Sup. Ct. Writ Application, 20-KH-654, efiled 3/4/20 (received from Thomas by prison legal department on 3/4/20).

[45]  St. R. Suppl. Vol. 1 of 3, Application for Post-Conviction Relief, 8/18/20 (dated 8/10/20); *id.*, Memorandum in Support, at 2, 8/18/20.

[46]  *Id.*, Trial Court Order, 9/1/20.

[47]  St. R. Suppl. Vol. 2 of 3, 5th Cir. Order, 20-KH-411, 12/8/20; *id.*, 5th Cir. Writ Application, efiled 11/13/20 (received from Thomas by the prison legal department on 11/13/20).

10

Louisiana Supreme Court summarily denied Thomas' subsequent writ application asserting the same claim.[48]

## III.    FEDERAL HABEAS PETITION

On February 20, 2020, after correction of certain deficiencies, the clerk of court filed Thomas' original petition for federal habeas corpus relief which asserts the following claims:

(1)    he was denied effective assistance when appellate counsel failed to raise a preserved confrontation clause claim and a prosecutorial misconduct claim;

(2)    he was denied effective assistance when trial counsel failed to (a) adequately investigate, (b) interview state witnesses Ramonica Gainey and Chad Gruden and potential defense witnesses Danita Brock, Glenn Lemon, Detective Gai, and co-defendant Garard Achelles, (c) request a mistrial when prosecutor sought inadmissible other crimes evidence from a witnesses, (d) request a mistrial when a State witness gave prejudicial, non-responsive answer, (e) request a mistrial when prosecutor repeatedly commented on petitioner's post-arrest silence, and (f) request an expert on drug side effects;

(3)    prosecutorial misconduct occurred when the prosecutor repeatedly commented on petitioner's post-arrest silence and relied on perjured testimony; and

(4)    during sentencing, the state trial court denied petitioner the right to a fair trial by denying his motion for new trial based on insufficient evidence and proof of identity.[49]

On June 1, 2020, the State filed a response in opposition to Thomas' petition asserting that the petition was not timely filed and alternatively, that Thomas failed to fully exhaust his second ineffective assistance of trial counsel claim regarding the failure to interview certain witnesses.[50]

Thomas replied to the State's opposition arguing that his federal petition was timely filed and

---

[48] *Thomas v. Vannoy*, 2021-KH-00243 (La. 4/13/21), 313 So. 3d 1251; St. R. Suppl. Vol. 3 of 3, La. Sup. Ct. Writ Application, 21-KH-243, efiled 1/7/21 (received from Thomas by the prison legal department on 1/7/21).

[49] ECF No. 5, at 5, 7, 8, 10, 39-40.

[50] ECF No. 14.  The State also reserved its right to assert a procedural default defense and address the merits of the claims.  *Id*. at 20.

review of his claims was exhausted through the Louisiana Supreme Court.[51]   As stated above, the case was stayed on July 6, 2020, and reopened on November 4, 2020, for further proceedings.[52]

When the case reopened, Thomas supplemented his petition, asserting additional grounds of ineffective assistance when his trial counsel failed to call a favorable witness, Glenn Lemon, whose purported affidavit was "newly discovered" exculpatory evidence that demonstrates the prejudice caused by his counsel's deficient performance in failing to investigate and call Lemon at trial.[53]   On March 5, 2021, the State filed a second response in opposition re-urging its limitations defense and asserting that portions of Thomas' ineffective assistance of trial counsel claim remain unexhausted.[54]   In reply, Thomas again argues that his petition was timely filed and he has completed state court review of all of his claims.[55]

## IV.   LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996,[56] and applies to habeas petitions filed after that date.[57]   Thomas' original petition is deemed filed on January 28, 2020.[58]

---

[51] ECF No. 36.

[52] ECF. Nos. 22, 23.

[53] ECF Nos. 28, 28-1, at 2-3.

[54] ECF No. 39, at 4.   The State again reserved its right to assert other defenses and arguments.   *Id*. at 5.

[55] ECF No. 42.

[56] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F. 2d 1501, 1505 (5th Cir. 1992).

[57] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[58] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.   *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) *abrogated on other grounds by Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013); *Spotville*

## A.    Preliminary Considerations

The two threshold questions in habeas review under the amended statute are (1) whether the petition is timely and (2) whether petitioner's claims were adjudicated on the merits in state court.   In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[59]   The State asserts that Thomas failed to exhaust complete review of his ineffective assistance of trial counsel arguments and that his federal habeas petition was not timely filed within one year after finality of his conviction.[60]

For the reasons that follow, the State's limitations and failure to exhaust defenses are supported by the record and counsel dismissal of Thomas' petition.

## B.    AEDPA Statute of Limitations

The AEDPA created in 28 U.S.C. § 2244(d)(1) a one-year statute of limitations for the filing of a federal habeas petition.   Under § 2254(d)(1)(A), the statute of limitations requires that a petition must ordinarily be filed within one year of the date the conviction became final.[61]   The statute also provides three other triggering events that do not apply here.[62]   For purposes of

---

*v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The prison legal department's official stamps indicate that the petition and atta8iched pleadings were received from Thomas for mailing to a court on January 28, 2020.   ECF No. 2, at 1 (filed after deficiency corrected at ECF No. 4-1, at 1).

[59] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)) ("If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the prisoner has procedurally defaulted his federal habeas claim." (citations omitted)).

[60] ECF No. 14, at 15-20.

[61] 28 U.S.C. § 2244(d)(1)(A); *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).

[62] 28 U.S.C. § 2244(d) provides as follows:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of--
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

13

§ 2244(d)(1)(B), Thomas does not assert that he was subject to state action that impeded him from filing his federal petition in a timely manner.   None of Thomas' claims are based on a constitutional right that has been newly recognized by the Supreme Court and made retroactive to cases on collateral review to involve for purposes of § 2244(d)(1)(C).   Moreover, contrary to his arguments,[63] none of Thomas' claims raise a constitutional issue that is based on a new "factual predicate," as required by § 2244(d)(1)(D).

Subsection D provides for delayed commencement of the federal limitations period when a petitioner's claim is based on a factual predicate that could not have been discovered earlier through the exercise of due diligence.   Contrary to Thomas' argument, this subsection does not provide an extra window of time for reasserting a claim after the location or creation of evidence, like the Lemon affidavit, to support it.   Fifth Circuit precedent makes this clear:

> A habeas petitioner's AEDPA limitations period begins running from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). "[T]his means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018) (quoting *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015)).   Section 2244(d)(1)(D) does not "convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998).[64]

---

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

[63] ECF No. 28, ¶ 18, at 14; ECF No. 36, at 7-19.

[64] *Osborne v. Hall*, 934 F.3d 428, 432-33 (5th Cir. 2019).

Thomas incorrectly argues that the Lemon affidavit is a new factual predicate for his claim of ineffective assistance of counsel.   As the state district court pointed out in rejecting the affidavit as "newly discovered evidence," the affidavit was simply part of an unsuccessful attempt by Thomas to file a second and repetitive application for state post-conviction relief.[65]   Thomas had already asserted the claim that trial counsel was ineffective based on substandard pretrial investigation of the case as well as witnesses, specifically Brock and Lemon, in his initial post-conviction relief application in 2018.[66]   Thomas even mentions that his "trial counsel neglected to investigate, Danita [Brock] and Lemon about them watching the news about the homicide."[67] Indeed, the state court record demonstrates that Thomas knew about trial counsel's alleged ineffectiveness for failing to investigate well before January 4, 2019, the date of Lemon's purported affidavit.   Thomas has failed to establish a factual predicate event to reset the start of the limitations period under § 2244(d)(1)(D).

Pursuant to § 2244(d)(1)(A), the court must then consider whether Thomas filed his federal petition within one year of the finality of his convictions.   Thomas' convictions were final on August 17, 2017, when the time for filing for a writ of certiorari in the United States Supreme Court expired 90 days after the May 19, 2017, decision by the Louisiana Supreme Court on his state court direct appeal and no further direct appellate review was available.   Applying § 2244 literally, Thomas had until August 17, 2018, to file his federal habeas corpus petition.   Thomas did not file his federal habeas corpus petition within this one-year period.   Accordingly, his

---

[65] St. R. Vol. 5 of 15, Trial Court Order on Application, 6/18/19.
[66] St. R. Vol. 4 of 15, Memorandum in Support, at 21-25, 8/23/18 (dated 8/17/18).
[67] *Id.* at 27.

petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled under one of the following two ways recognized in the applicable law.

### 1. Statutory Tolling

The AEDPA provides for suspension of its one-year limitations period: "The time during which a *properly filed application for State post-conviction or other collateral review* with respect to the pertinent judgment or claim is pending *shall not be counted* toward any period of limitation under this subsection."[68]  The Supreme Court has described this provision as a tolling statute.[69]

By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.[70]  Rather, as the United States Fifth Circuit and other federal courts have held, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.[71]

For a post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing

---

[68] 28 U.S.C. § 2244(d)(2) (emphasis added).

[69] *Duncan v. Walker*, 533 U.S. 167, 175-78 (2001).

[70] *Flanagan*, 154 F.3d at 199 n.1.

[71] *Id.*; *Brisbane v. Beshears*, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (unpub.); *Gray v. Waters*, 26 F. Supp. 2d 771, 771-72 (D. Md. 1998).

requirements,'" such as timeliness and location of filing.[72]    The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed *pro se* by a prisoner.[73]    I have applied that rule where necessary to petitioner's state court pleadings delineated in the procedural history.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"[74]    The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.[75]    A "pertinent judgment or claim" requires that the state court filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims being raised in the federal habeas corpus petition.[76]

As calculated above, Thomas' conviction was final under federal law on August 17, 2017. The AEDPA limitations period began to run the next day, August 18, 2017, and continued for a total of 364 days, but was interrupted on August 17, 2018, when Thomas filed his first state court application for post-conviction relief.    This left one day remaining in the one-year limitations period.    The AEDPA filing period was tolled during the pendency of Thomas' properly filed state

---

[72] *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Williams v. Cain*, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999)); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000).

[73] *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

[74] *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

[75] *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").

[76] *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

court post-conviction pleadings. Specifically, Thomas' state post-conviction application remained pending from its filing on August 17, 2018, through May 15, 2019, when Thomas did not timely file a writ with the Louisiana Supreme Court within 30-days after the Louisiana Fifth Circuit issued its April 15, 2019, ruling.

The AEDPA one-year limitations period began to run again on May 16, 2019, for the one remaining day. On that day, May 16, 2019, Thomas had no properly filed state post-conviction or other collateral review pending in any court. The AEDPA limitations period therefore expired on May 16, 2019 as Thomas had no other pending application for post-conviction relief or other collateral review at that time. Thomas filed his second post-conviction application on May 20, 2019, which was four days *after* the AEDPA filing period expired on May 16, 2019.[77] However, a state court pleading filed after expiration of the AEDPA filing period does not provide a petitioner any tolling.[78]

Similarly, Thomas' Louisiana Supreme Court writ application filed under the mailbox rule on May 20, 2019, offers no tolling or extension of the limitations period. The writ application was filed five days *after* it should have been filed on May 15, 2019, pursuant to La. Sup. Ct. R. X § 5. Under this rule, Thomas had 30 days from *issuance* of the appellate court's ruling to mail or file a writ application with the Louisiana Supreme Court. The *issuance* of the appellate court's

---

[77] St. R. Vol. 7 of 7, Application for Post-Conviction Relief, at 5, 6/4/18 (dated 5/29/18).
[78] *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.") *see also Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (missing the AEDPA deadline by even one day renders a federal petition untimely.)

opinion, *not the receipt* of it by petitioner, starts the time for seeking further review.[79]    The record reflects that the Louisiana Fifth Circuit's order was issued and mailed to the parties, including Thomas, on April 15, 2019.[80]    The fact that Thomas claims he received the copy at a later date did not restart the time period for seeking review in the Louisiana Supreme Court.[81]    A writ application that fails to comply with LA. SUP. CT. R. X § 5 is not "properly filed," and therefore not "pending," because it is untimely.[82]    The United States Supreme Court has made clear that "[w]hen a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)," *even if* the merits are also addressed.[83]    Thus, Thomas' untimely May 20, 2019, Louisiana Supreme Court writ application did not interrupt or toll the AEDPA filing period.

Further, Thomas' reliance on *Harris v. Reed* and its progeny to forgive his failure to comply with LA. SUP. CT. R. X § 5 is misplaced.    *Harris*, and related cases, addresses procedural bar to federal habeas review when a state court judgment declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement.[84]    That is *not* the issue before the court at this stage.    The court is considering here whether Thomas' federal petition was timely filed, not whether a state court imposed a bar to review of the substance of his claims.    The

---

[79] *Bryant v. Louisiana*, No. 06-0088, 2007 WL 2323383 at *5-7 (E.D. La. Aug. 9, 2007) (time period under LA. SUP. CT. R. X § 5 begins from issuance of notice of the appellate court's judgment not upon receipt of the notice).

[80] St. R. Vol. 12 of 15, 5th Cir. Notice, 19-KH-67, 4/15/19.

[81] *Jasmine v. Hubert*, No. 06-512, 2008 WL 199867 at *4 (E.D. La. Jan. 22, 2008) (citing *Williams*, 217 F.3d at 308).

[82] *Butler Cain*, 533 F.3d 533, 318-19 (5th Cir. 2008) (LA. SUP. CT. R. X § 5(a) forbids any extension of time); *Williams*, 217 F.3d at 309-11 (same); *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same).

[83] *Pace*, 544 U.S. at 414 (quoting *Carey*, 536 U.S. at 226).

[84] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977).

recognized mechanisms for escaping the one-year AEDPA limitations period are statutory tolling,[85] equitable tolling,[86] and actual innocence.[87]   Each of these concerns is discussed later in this Report and none provides any exception for Thomas' untimely filed federal petition.

Thomas' federal petition is deemed filed on January 28, 2020, under the applicable mailbox rule.   This was eight months and eleven days after the AEDPA one-year filing period expired on May 16, 2019.   Accordingly, Thomas' federal petition was *not* timely filed and must be dismissed with prejudice for that reason.

## 2.  No Equitable Tolling Warranted

The United States Supreme Court has held that AEDPA's one-year statute of limitations period in § 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist that prevented timely filing.[88]   Equitable tolling is warranted only in situations during which a petitioner was actively misled or prevented in some extraordinary way from asserting his rights.[89]

Thomas has asserted no reason that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case, and I can find none.   The record does not establish any circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable

---

[85] *See* 28 U.S.C. § 2244(d)(2).
[86] *Holland v. Florida*, 560 U.S. 631, 649 (2010).
[87] *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013).
[88] *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998).
[89] *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

tolling in this case.[90]   Thomas, therefore, is not entitled to equitable tolling of the one-year AEDPA filing period.

### 3.   Actual Innocence Exception Not Established

Thomas argues that he is actually innocent based on the Lemon affidavit, which he claims to constitute newly discovered evidence of his actual innocence.   The state courts wholly rejected Lemon's purported affidavit as uncreditable and unauthentic.   In the affidavit, Lemon (referred to at trial as "Ace") indicates that he told counsel for Thomas and Achelles that he wanted to testify at trial about his version of the events.[91]   He felt like the attorneys were blaming him in part for having been with one or both defendants.[92]   He further claims that he left the company of Thomas and Achelles and had plans to meet up with Thomas later at a McDonald's, but never did.   He also claims that "Abby" called him and said she had Thomas' phone and needed the password to get into it.   Lemon further states that he stayed at the London Lodge hotel because he was tired

---

[90] *See Holland*, 560 U.S. at 651-54 (equitable tolling warranted where attorney was grossly negligent and failed to meet professional standards of care when he ignored client's requests to timely file a federal petition and failed for years to respond to client's letters or communicate with client); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling warranted for significant state-created delay when, for almost one year, state appeals court failed in its duty under Texas law to inform petitioner that his state habeas petition had been denied despite his persistent requests, and petitioner diligently pursued federal habeas relief); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling *not* justified during petitioner's 17-days in psychiatric ward where he was confined, medicated, separated from his glasses and rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did *not* justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court thrice extended deadline to file habeas corpus petition beyond expiration of the AEDPA grace period).
[91] ECF No. 28-1.
[92] *Id*. at 2.

and did not want to fall asleep driving.   Significantly, he also attests that he told both attorneys: "I don't know anything about a murder and I don't know who did the murders."[93]

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" notwithstanding the "expiration of the statute of limitations" under the AEDPA.[94]   "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."[95]   As the Court has stated:   "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"[96]

The Court construes the "actual innocence" doctrine narrowly,[97]  and has distinguished the concept of actual innocence from the concept of legal innocence.[98]   "In the context of a noncapital case, the concept of 'actual innocence' is easy to grasp," and means simply a "mistake" was made and "the State has convicted the wrong person of the crime."[99]   The Supreme Court has also made clear that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare."[100]

In addition, when applying the actual innocence doctrine, the Fifth Circuit has held that evidence is "not 'new' [when] it was always within the reach of [petitioner's] personal knowledge

---

[93]  *Id.*

[94]  *McQuiggin*, 569 U.S. at 386.

[95]  *Id.* at 392 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

[96]  *Id.* at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

[97]  *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992) (explaining that the actual innocence doctrine is "narrow" and typically "concerned with actual as compared to legal innocence").

[98]  *Id.* at 339-40; *Smith v. Murray*, 477 U.S. 527, 537 (1986).

[99]  *Sawyer*, 505 U.S. at 341.

[100]  *Schlup*, 513 U.S. at 321.

or reasonable investigation."[101]   Thomas has not presented any new or reliable evidence of his alleged actual innocence under these factors.   Assuming Lemon's affidavit is authentic, it at best reflects that Lemon's version of the events was known to Thomas' counsel before trial.   The information, therefore, was always available to Thomas' defense and is not new.

Further, Lemon's affidavit fails to provide any proof that Thomas is actually innocent. Lemon is emphatic that he told the attorneys for Thomas and Achelles that he was *not* with Thomas or Achelles after they left their "dates," and he *knew nothing* about the murders or who committed them.   This does not tend to prove that Thomas is actually innocent; it proves only that Lemon was not always with Thomas and that Lemon had no information about the murders.

Under the narrow Supreme Court standards, the purported affidavit from Lemon does not meet the actual innocence exception.   The affidavit presents nothing new since Lemon himself shared this information with defense counsel prior to trial.   The affidavit also contains no evidence of Thomas' actual innocence to establish that, more likely than not, no reasonable juror would have convicted Thomas had they received Lemon's statement.[102]

For these reasons, the information Thomas relies on to bypass the AEDPA statute of limitations is not new or reliable to invoke the rare actual innocence exception under *Schlup* and *McQuiggin*.   Thomas has not met the high burden under these cases to forgive or restart the AEDPA statute of limitations.

---

[101] *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008); *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018) ("[e]vidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'") (quoting *Moore*, 534 F.3d at 465), *cert. denied*, 139 S. Ct. 2714 (2019); *Joyner v. Kent*, No. 16-16595, 2019 WL 3753693, at *1 (E.D. La. Aug. 8, 2019).
[102] *Id*. at 394-95 (quoting *Schlup*, 513 U.S. at 329).

### 4. *Martinez* Exception Does Not Apply

Thomas has offered no other exception to the AEDPA statute of limitations, and the fact that he has urged ineffective assistance of counsel claims does not alter this conclusion. In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"[103] However, the *Martinez* and *Trevino* decisions did *not* address or excuse the untimely filing of a federal habeas petition.[104] *Martinez* and *Trevino* also are *not* new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA.[105] Neither *Martinez* nor *Trevino* provide Thomas any relief from his untimely federal filing.

### 5. Summary of AEDPA Limitations

Thomas' state court conviction was final on August 17, 2017. He had one year from that date, or until August 17, 2018, to file his federal petition under the provisions of § 2244(d)(1)(A). After considering available statutory tolling, the one-year AEDPA filing period is deemed to have ended on May 16, 2019. Thomas, however, filed his federal petition on January 28, 2020. Thomas' federal petition was filed eight months and eleven days after the AEDPA filing period

---

[103] *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (quoting *Martinez*, 566 U.S. at 13).

[104] *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at *1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation).

[105] *See In re Paredes*, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) ("the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).

expired.   Thomas has not established any reason for the court to excuse or extend the one year AEDPA filing period under the recognized means addressed above.   Accordingly, Thomas' federal petition was *not* timely filed and must be dismissed with prejudice for that reason.

### C.    Exhaustion Doctrine

Even were the court to excuse Thomas' untimely filing of the federal habeas petition in this case, his failure to exhaust state court review, another defense urged by the State, supports dismissal of his federal petition without further review.

### 1.  Standards for Exhaustion

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."[106]   A federal habeas petition should be dismissed if state remedies have not been exhausted as to *all* of the federal habeas claims and supporting arguments brought by the petitioner.[107]

The exhaustion requirement is satisfied when the substance of the federal habeas claims has been "fairly presented to the *highest* state court" in a procedurally proper manner.[108]   "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary review procedures.[109]   The federal claim also must be "the 'substantial equivalent' of one presented to the state courts if it is

---

[106] *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419.
[107] *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added).
[108] *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added).
[109] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan*, 533 U.S. at 177-79.

to satisfy the 'fairly presented' requirement."[110]  "This requirement is not satisfied if the petitioner presents *new legal theories* or *new factual claims* in his federal application."[111]  It also is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court in a procedurally proper manner.[112]

### 2.  Thomas' Unexhausted Claim

The State contends that, and the record reflects, that Thomas did not exhaust complete review of his second claim of ineffective assistance of counsel.[113]  In the relevant part of that claim, Thomas asserts that he received ineffective assistance when his trial counsel failed to interview potential defense witnesses including Danita Brock, Glenn Lemon, Detective Gai and co-defendant Achelles.[114]  The State urges that Thomas did not specifically present to the Louisiana Supreme Court the portion of this argument that relates to potential witnesses Brock, Gai, and Achelles.[115]  The State acknowledges, however, that Thomas exhausted review of the claim as it relates to Lemon.[116]

The substance of a federal claim is deemed "fairly presented" in state court for purposes of the exhaustion doctrine only if the petitioner relies upon identical facts and legal theories in both the state court proceeding and the federal habeas relief.[117]  Thus, when a claim or supporting argument is not specifically and properly presented to each level of the state courts, review is not

---

[110] *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).
[111] *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420) (emphasis added).
[112] *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).
[113] ECF No. 14, at 19-20; ECF No. 39, at 3-4.
[114] ECF No. 5, at 39-40.
[115] ECF No. 39, at 4.
[116] ECF No. 39, at 4.
[117] *Picard*, 404 U.S. at 275; *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

exhausted.[118]   Specific to "distinct ineffective assistance claims," the supporting grounds are treated separately and "[e]xhaustion 'require[s] a state prisoner to present the state court with the same claim he urges upon the federal courts.'"[119]   For example, review of an ineffective assistance of counsel is not exhausted if the petitioner did not assert the same argument or basis in the state court proceedings that is asserted in the federal habeas petition.[120]

Thomas' claims of ineffective assistance of counsel related to his counsel's alleged failure to investigate or call several potential witnesses, Brock, Det. Gai, and Achelles, for different reasons.   His arguments related to these potential defense witnesses were not specifically presented in any of Thomas' writ applications to the Louisiana Supreme Court, despite Thomas' invocation of ineffective assistance arising from or related to Lemon's affidavit.   Having failed to specifically assert these claims, Thomas has failed to exhaust state court review of all claims and theories asserted in his federal petition (claim 2(b)).

### 4.  Thomas' Mixed Petition Should be Dismissed

For the reasons above, Thomas has not allowed the state courts one full opportunity to review *all* of his claims and theories through the Louisiana Supreme Court.   Therefore, this case, which includes both exhausted and unexhausted claims, is a "mixed petition," and it is subject to dismissal without prejudice.[121]

---

[118] *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420).

[119] *Wilder*, 274 F.3d at 261.

[120] *See Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) ("Because [petitioner] is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."); *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983) (factual basis underlying the ineffective assistance of counsel claim were "significantly different" from those raised in state court, and, therefore, were not exhausted).

[121] *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420).

The Supreme Court has long required that a mixed petition like this one be dismissed without prejudice to allow for complete exhaustion.[122]  The Supreme Court recognized that a petitioner has two choices when faced with dismissal of a mixed petition: (1) return to the state courts to exhaust the claims in full; or (2) amend or resubmit the petition to pursue only exhausted claims in the federal district court.[123]  If Thomas' federal habeas petition is not dismissed as untimely filed, he should now be required to make this choice.

### 5.  Thomas' Mixed Petition Should Not be Stayed

In *Pliler*, the Supreme Court also addressed the possibility of a stay-and-abeyance in connection with "mixed petitions" for habeas relief containing both exhausted and unexhausted claims.[124]  The Supreme Court later held that stay-and-abeyance was an extraordinary remedy *not* to be made readily available to a habeas petitioner.[125]  In *Rhines v. Weber*, the Court later cautioned that a stay-and-abeyance "should be available only in *limited* circumstances," and is appropriate *only* when the district court determines that there was "good cause" for the failure to exhaust.[126]  Stays are improper when the unexhausted claims are "plainly meritless" or when the petitioner has engaged in "abusive litigation tactics or intentional delay."[127]

In this case, there is no good cause for Thomas' failure to exhaust review of all of his ineffective assistance of counsel claims and theories.   The extraordinary remedy of a stay for him to fully exhaust is not available or necessary under the circumstances of this case, particularly

---

[122] *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (citing *Rose*, 455 U.S. at 510).
[123] *Id*. at 230-31.
[124] *Pliler*, 542 U.S. at 230-31.
[125] *Rhines v. Weber*, 544 U.S. 269, 278 (2005).
[126] *Id*. at 277 (emphasis added).
[127] *Id*. at 277-78.

when Thomas did not seek to exhaust state court review of these claims during the previously issued stay of these proceedings granted after the State raised the exhaustion defense.

If Thomas' petition is not dismissed as untimely, it should be dismissed *without* prejudice to allow him to exhaust any available state court remedies as to his ineffective assistance claims, unless Thomas exercises the option, within the fourteen (14) day objection period provided below, to amend his habeas petition to dismiss the unexhausted claims and present *only* the exhausted claims identified in this report.[128]

### 6.  Summary of Exhaustion

For the foregoing reasons, Thomas did not exhaust state court review of his distinct ineffective assistance of counsel claims arising from counsel's alleged failure to investigate and/or call Brock, Det. Gai, and Achelles as defense witnesses.  Should his federal petition survive dismissal as untimely under the AEDPA statute of limitations, it should be dismissed without prejudice for his failure to exhaust, unless he amends or dismisses the unexhausted claims related to counsel's failure to investigate and/or call Brock, Det. Gai, and Achelles as potential defense witnesses.

## **<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that Thomas' habeas corpus petition under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

In the alternative, should the Court deem the petition timely filed, it is **RECOMMENDED** that Thomas' habeas corpus petition under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust, unless Thomas amends or dismisses his unexhausted claims.

---

[128] *Pliler*, 542 U.S. at 233 (citing *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[129]

New Orleans, Louisiana, this _____6th_____ day of August, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[129] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).